ZARCO EINHORN SALKOWSKI
ATTORNEYS AT LAW

2 S. BISCAYNE BLVD., 34TH FLOOR, MIAMI, FL 33131
MIAMI: (305) 374-5418 | NATIONAL: (800) 299-4929
WWW.ZARCOLAW.COM

ROBERT ZARCO
ROBERT M. EINHORN
ROBERT F. SALKOWSKI*
HIMANSHU M. PATEL
KAARI-LYNN S. GAGNON
MARY NIKEZIC**
MICHAEL D. BRAUNSTEIN

*ALSO ADMITTED TO PRACTICE IN NJ
**ALSO ADMITTED TO PRACTICE IN IL

SABRINA ZARCO
JACKY BEDA
ALEC R. SHELOWITZ
ROBERT M. GALLINAR
VICTORIA DIAZ
TAYLOR N. DUNCKER
ALAINA LIMBO

September 1, 2026

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

***Re:*** ***Engel & Voelkers Florida Residential LLC ("EVFL") v. Engel & Völkers Americas, Inc. ("EVA"), Case No. 1:25-cv-10474 (LGS)—Renewed Letter Motion Regarding Second Request No. 39***

Dear Judge Schofield:

We, together with our local counsel, Friedman Kaplan Seiler Adelman & Robbins LLP, represent Plaintiff/Counterclaim Defendant EVFL. Pursuant to the Court's August 31, 2026 Order (ECF 74) and Local Civil Rule 37.2, EVFL renews its application for a pre-motion conference on its anticipated motion to compel documents responsive to Request No. 39 of its Second Requests for Production. The Court denied that portion of EVFL's prior application without prejudice to renewal "by a specific showing of (1) the relevance of the Chile and South Africa transactions, given EVA's representation that those territories are outside EVA's ambit; (2) the relevance of any other specifically identified transactions."[1] (ECF 70.)

## I. EVA's "Ambit" Representation Does Not Place These Documents Beyond Its Possession, Custody, Or Control.

Rule 34 requires production of documents within a party's possession, custody, or control. *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023). "Control" includes "the right, authority, or practical ability to obtain the documents," *id.*, or "where a corporate entity has the ability in the

[1] As to the Court's second category, EVFL limits its request to Chile and South Africa. While Item 1 of EVA's 2026 FDD lists eleven master franchise territories around the world: Argentina, Colombia, Balearic Islands, Chile, Italy, Canada, Peru, South Africa, Switzerland, and Uruguay, upon information and belief, several of the listed masters are directly owned by EVA or EV Global. Moreover, upon information and belief, only Chile and South Africa are in stages for renewal/buyback. Thus, EVFL will narrow Request No. 39 to the Chile and South Africa territories.

ordinary course of business to obtain documents held by another corporate entity." S*.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000). In fact, where an "agent-subsidiary can secure documents of the principal-parent to meet its own business needs," courts "will not permit the agent-subsidiary to deny control for purposes of discovery." *Id.* (quoting *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140–41 (3d Cir. 1988)); *see also Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) (U.S. party must produce documents held by its foreign affiliate).

EVA's "ambit" representation asks the Court to treat EVA as a standalone franchisor with no window into the Engel & Völkers master network. Yet, EVA's own documents[2] and witness testimony show that EVA does not operate in a silo: its communications with its parent are closely knit, and Hamburg directs the very decisions at issue. The contemplated reacquisition of EVFL itself was directed from Hamburg. Mr. Siegel testified that the 2025 valuation of EVFL's business turned in large part on a compromise between EVFL's expectations and Hamburg's budget. Mr. Hitt, EVA's former CEO, personally routed EVFL's confidential offering memorandum to Hamburg in 2021. In 2025, former Group CEO Jawed Barna himself was to travel to Florida for the buy-back discussions. Hamburg directed EVA to prepare the 2024 McKinsey Report—a collaboration between EVA and Global contemplating the buy-back of EVFL. Hamburg personnel instructed EVA to analyze the "negative/isolated MLP Florida effect" as of YTD 2025 to prepare Mr. Barna's talking points for the company's December 2025 Advisory Board Meeting. EVA's own corporate guidelines are established by Hamburg. And EVA told this Court that Mr. Siegel was unavailable for deposition because he had been "summoned to Germany" by its parent. (ECF 51 at 2.) EVA does not stand apart from the network's other master license partners ("MLPs"): until EVA asked that the practice stop in 2023, Hamburg circulated weekly reports directly to every MLP in the world, including EVFL—treating Florida the same as the masters Hamburg licenses directly. Simply put, EVA has the practical ability to obtain documents held by its direct-parent company and therefore, has control over the documents pursuant to Rule 34.

## II. The Documents Responsive to Request No. 39 Are Relevant.

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)). To satisfy this standard, "the moving party must articulate a concrete linkage between the discovery sought and the [claims or] defenses asserted in the case." *Edmondson v. RCI Hosp. Holdings, Inc.*, 16-CV-2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018) (citation omitted). As fully explained below, Request No. 39 bears that concrete linkage to EVFL's damages theory and its implied covenant and FDUTPA claims in four respects.

---

[2] While EVFL does not agree with the designations, several of the documents referenced in this section have been marked as "Attorney's Eyes Only." At the Court's direction, EVFL will submit the documents under seal for its review.

First, an Engel & Völkers master territory is a sui generis asset because its business operated entirely different from a generic brokerage. EVFL was simultaneously a franchisee (as to EVA) and a franchisor (as to its Florida subfranchisees)—a dual position no direct franchisee shares. In fact, EVA's own witnesses testified that EVFL is not comparable to EVA's direct franchisees, describing the attempt to do so as "mixing apples and zebras." EVFL was the brand's last remaining domestic master, so the universe of same-brand comparables is limited to California (2019) plus the system's current international master territories, such as Chile and South Africa. Indeed, EVFL's experts cannot credibly look elsewhere for EVFL's diminution in enterprise value damages claim without EVA attacking EVFL's valuation methodology at trial. (FAC ¶ 119.) Thus, the methodology Engel & Völkers itself applied in pricing its own master territories—royalty-stream multiples, EBITDA multiples, discount rates is relevant. If the system priced California, Chile, and South Africa on a consistent internal framework, that framework is direct evidence of what Florida was worth on Engel & Völkers' own math.

Second, EVFL alleges the Florida buy-back was not an isolated decision but one execution of a group-wide program to consolidate master territories into direct operations ahead of Permira's exit—franchised royalty streams convert to owned revenue, which prices higher at exit. (FAC ¶¶ 1, 28, 39, 70–72.) EVA's own documents place a Florida buy-back on the strategy roadmap in 2024, and upon information and belief, Chile and South Africa are approaching their own renewals this year. Contemporaneous reacquisition or wind-down planning for those territories would be direct evidence of the coordinated plan—probative of bad faith under the implied covenant and unfairness under FDUTPA.

Third, comparison to other master franchisees is EVA's own methodology. Its witness testified that the master franchise agreements in the 2020 and 2021 FDDs delivered to EVFL were prepared by comparing them against the other master franchise agreements. With respect to the buy-back figures in EVA's documents, EVA has not produced any documents that explain the basis for its internal valuation model of EVFL. If its internal analyses relied on other master territories within the network, then such documents should be produced.

Lastly, how the Engel & Völkers system handled termination, non-renewal, and growth-target enforcement in its other master territories bears directly on whether EVFL's treatment—the refusals to renegotiate the growth schedule and the defaults EVFL alleges were pretextual—deviated from the organization's ordinary practice. Uniform enforcement elsewhere cuts one way; Florida-only severity the other. From this perspective, the documents are probative both to EVFL's claims and EVA's defense.

As narrowed, the request targets a discrete set of territories in the two categories already defined for California, and the Protective Order (ECF 41) answers any confidentiality concern. EVFL respectfully requests a conference and leave to move to compel.

Respectfully submitted,

/s/ F. Alaina Rodriguez
F. Alaina Rodriguez, Esq.

cc: All counsel of record (via ECF)

EVFL's application for leave to submit a reply is **GRANTED**. EVFL's renewed application for a pre-motion conference is **DENIED**. In light of (1) EVA's representation that the Chile and South Africa master franchisors are not currently and have not recently been involved in any renewal or buyback, and (2) the burdens of cross-border discovery from non-parties, EVFL has failed to demonstrate that documents responsive to RFP 39 are proportional to the needs of the case.

The Clerk of Court is respectfully directed to terminate the motions at Dkt. No. 76 and Dkt. No. 80.

Dated: September 8, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE